UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARK P. HORNE,

                          Petitioner,                    **DECISION AND ORDER**

          -vs-                                           No. 04-CV-6200

KENNETH S. PERLMAN,
                          Respondent.


_____

I.     **Introduction**

          On April 14, 2004, petitioner Mark P. Horne ("Horne") filed this *pro se* petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Erie County

Court  on one count of first degree burglary (N.Y. Penal Law §140.30(4)) and one count of

second degree menacing (N.Y. Penal Law § 120.14(1)). Horne raised the following grounds for

habeas relief: (1) the show-up identification was unduly suggestive; (2) trial counsel did not

provide effective assistance on several bases; (3) the verdict was against the weight of the

evidence; and (4) the sentence was harsh and excessive. *See* Docket #1. On April 8, 2005, Horne

filed a pleading  docketed as "Memorandum in Opposition re Petition for Writ of Habeas Corpus

by Kenneth S. Perlman" *See* Docket #10. The first sixteen pages of this document consist of

respondent's memorandum of law filed in August 2004 (Docket #5). The remaining pages of

Docket #10 constitute a new memorandum of law by Horne in which he raises one additional

ground for habeas relief, namely, that trial counsel was ineffective in failing to serve an alibi

notice. Respondent has objected to the inclusion of the new claim in Horne's habeas petition on

the basis that Horne had not received permission from the Court to file an amended petition.

-1-

Because addressing the issues of whether the proposed claim is timely or "relates back" to the original petition would be more time-consuming than considering the merits of the claim, the Court will deem Horne's original petition to be amended to include the new ineffective assistance of trial counsel claim.

On November 3, 2005, Horne filed a motion to compel seeking the tape of a "911" emergency call made with respect to the incident that led to his arrest. Respondent has opposed the motion to compel. *See* Docket #12. The matter is now ready for disposition by the undersigned pursuant to the parties' consent to magistrate jurisdiction under 28 U.S.C. § 636(c). For the reasons set forth below, the motion to compel is denied and the petition is dismissed.

## II.      Motion to Compel

On November 30, 2005, Horne filed a request under New York's Freedom of Information Law ("FOIL") embodied in New York's Public Officer Law § 84. He sought "the 911 tape of call number B0890 on 5/14/90 time: 23:30 from: 132 Hewitt Ave. Buffalo N.Y." *See* Petitioner's FOIL Request, attached as Exhibit A (Docket #12-2) to Respondent's Opposing Affidavit to Petitioner's Motion to Compel (Docket #12-1). Also on November 30, 2005, Horne filed his motion to compel discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure in this Court. *See* Docket #11. This demand for discovery seeks the same information as requested in his FOIL request; Horne claims that it "will held [*sic*] his alibi" for the time of the crime. Thus, Horne argues, it is exculpatory material that must be disclosed pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

The Erie County District Attorney's Office denied the FOIL request on December 19, 2005, advising Horne that it had responded to Horne's previous request for the same information

and enclosed its letter denying the previous request. *See* Letter from District Attorney to Petitioner, attached as Exhibit B (Docket #12-2) to Respondent's Opposing Affidavit to Petitioner's Motion to Compel (Docket #12-1). The District Attorney's Office noted that under New York's County Law § 308, records of 911 calls are exempted from disclosure under FOIL. *See id.* As respondent notes, Horne did not file an administrative appeal or seek review of the denial in state court pursuant to New York Civil Practice Law and Rules Article 78.

Respondent argues that the material cannot be *Brady* material because Horne claims that it is his voice on the 911 tape. Respondent's Opposing Affidavit to Petitioner's Motion to Compel at 3, ¶9 (Docket #12-1). Indeed, attached to Horne's motion to compel is a printout of a document titled "Incident History Detail," which appears to be the 911 call history. On it he has written, "This is the call tape that has my voice on it." *See* Docket #11. Thus, to the extent that Horne is arguing that the 911 tape is *Brady* material, the Court agrees with respondent that it is not technically exculpatory and therefore not within the ambit of *Brady*. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999) ("There are three components of a true Brady violation: (1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.").

Furthermore, any *Brady* claim based on the 911 tape that Horne might raise on habeas review is unexhausted since he never raised such a claim on direct appeal or collateral review of his conviction. However, any such claim must be "deemed exhausted" but procedurally defaulted because Horne has no recourse in state court were he to attempt to exhaust it. *Grey v. Hoke*, 933 F.2d at 120-21. He has already used the one direct appeal to which he is entitled, and

if he were to raise the claim in a motion to vacate under New York Criminal Procedure Law ("C.P.L.") § 440.10, it would be denied on a procedural basis. *Id.* This is because Horne presumably was aware of the 911 tape (if he was there during the call, as he alleges) and therefore could have raised the claim on direct appeal, but he failed to do so. *See* N.Y. Crim. Proc. Law 440.10(2)(c). Because the claim would be procedurally defaulted, Horne would not be able to obtain review of the claims merits unless he could show cause and prejudice which, on this record, he is unable to do. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

To the extent that Horne seeks discovery under Rule 16 of the Federal Rules of Criminal Procedure, the Court denies the application. First, the Federal Rules of Criminal Procedure are not applicable to this matter because a habeas corpus proceeding is a civil action. Second, as respondent notes, a habeas petitioner is not entitled to discovery as a matter of ordinary course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Discovery is only permitted if the district court finds "good cause" to allow it. Rule 6(1) of the Rules Governing Section 2254 Cases; *Bracy*, 520 U.S. at 904. A petitioner satisfies the "good cause" standard "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *Bracy*, 520 U.S. at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 299 (1969)). Horne's application is devoid of such a showing. As Horne has failed to satisfy the "good cause" standard, his discovery request for production of the 911 tape is denied.

## III.   Analysis of the Petition

### A.   Factual Background Regarding the Underlying Conviction

Horne's conviction arose from an incident that occurred on the evening of May 14, 2000.

That night, Charles Swygert ("Swygert") and his girlfriend, Kathleen Hammond ("Hammond"), agreed to babysit for Horne and his girlfriend, Marlita Kyle ("Kyle"), who also was Swygert's cousin, while they went to the store. When he found out that Horne would not be returning in time for them to go to the movies, Swygert smashed the portable phone down on the glass coffee table and broke it. Fearful of Horne's wrath, Swygert and Hammond left Kyle's apartment, hid their car, returned to the apartment that they shared with Andy Wutz ("Wutz"), and told Wutz not to open the door to anyone.

After returning to Kyle's apartment and finding the glass coffee table shattered, Horne went looking for the suspected culprit. Horne went to the apartment that Swygert shared with Wutz, banged on the door repeatedly until he was let in, and aimed a shotgun at Wutz's face. (Swygert, who apparently knew how angry Horne would be about the coffee table, was hiding in his bedroom with the door locked.) When Horne demanded to know where Swygert was, Wutz replied that he had been sleeping and did not know. Horne stated, "[D]on't lie to me or I will fucking kill you." Wutz held his hands in the air and pointed toward Swygert's bedroom.

As Horne charged down the hallway, Wutz–who was clad only in his underwear–took the opportunity to exit the apartment. He ran to a house with the lights on and asked the residents to call the police. Meanwhile, Horne's efforts to gain entry to Swygert's bedroom proved unsuccessful, and he left the apartment.

When the police arrived a few minutes later, a fearful Swygert hid in the shower and would not emerge because there was a warrant out for his arrest. After the police left, Swygert informed Wutz of Horne's name and described his car and where he could be found. Wutz called the police and relayed that information to them. Horne was apprehended shortly thereafter, and

Wutz identified him during a show-up identification procedure that night.

Following a jury trial in Erie County Court (Wolfgang, J.), Horne was found guilty of both counts in the indictment. He was sentenced as a second felony offender to a determinate sentence of eight years on the burglary charge and a concurrent determinate sentence of one year on the menacing charge.

Represented by new appellate counsel, Horne appealed his conviction to the Appellate Division, Fourth Department, of New York State Supreme Court, which unanimously affirmed his conviction on December 31, 2003. *People v. Horne*, 2 A.D.3d 1399 (App. Div. 4th Dept. 2003). The New York Court of Appeals denied leave to appeal on February 24, 2004. *People v. Horne*, 1 N.Y.3d 629 (N.Y. 2004).

On March 4, 2003, Horne collaterally attacked his conviction by means of a motion to vacate the judgment pursuant to New York Criminal Procedure Law § 440.10(1)(h). The trial court denied the motion on May 7, 2003. Permission for leave to appeal to the intermediate appellate court was denied on August 12, 2003. This petition for habeas relief followed.

**B.    Merits of Petitioner's Habeas Claims**

**1.    The identification was unduly suggestive**

Horne alleges that the show-up identification procedure was unduly suggestive because Wutz, the victim, had never met Horne. Horne complains that Wutz, "[a]fter having a shotgun pointed at him . . . was shown a black man with his hands behind his back in the presence of uniformed police officers." According to Horne, it therefore was inevitable that Wutz identified him as the assailant.

On direct appeal, the Fourth Department held that the prosecution met its initial burden

of establishing that the show-up identification procedure was "reasonable under the circumstances and not unduly suggestive[.]" *People v. Horne*, 2 A.D.2d at 1400. Furthermore, the court held, the show-up was conducted in "geographic and temporal proximity to the crime," and the police had Horne turn in the direction of the patrol car transporting the victim so as to prevent the victim from seeing the handcuffs on Horne, which were behind his back. *Id.* Finally, the court determined that the fact that Horne was standing in the presence of police officers did not in itself render the show-up suggestive. *Id.*

The admission of identification testimony violates due process only when the identification is "'so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law.'" *United States v. Bautista*, 23 F.3d 726, 729 (2d Cir.) (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967)), *cert. denied*, 513 U.S. 862 (1994); *see also Manson v. Brathwaite*, 432 U.S. 98, 116 (1977).  In order to determine whether identification testimony is constitutionally valid, the court first must determine whether the procedure by which the initial identification was obtained was impermissibly suggestive. *Bautista*, 23 F.3d at 729-30.  Even where the procedure is unnecessarily suggestive, the court must determine "'if, when viewed in the totality of the circumstances, [the out-of-court identification] possesses sufficient indicia of reliability.'" *Id.* (quoting *United States v. Simmons*, 923 F.2d 934, 950 (2d Cir.), *cert. denied*, 500 U.S. 919 (1991)); *see also Manson*, 432 U.S. at 114 ("[R]eliability is the linchpin in demonstrating the admissibility of identification testimony[.]").  In the absence of either element, there is no constitutional error. *See Bautista*, 23 F.3d at 729-30.

The practice of showing a suspect singly to a witness for the purpose of identification

shortly after a crime—commonly known as a "show-up"—is not inherently unconstitutional.  To

the contrary, the Second Circuit has held that, as opposed to police-arranged lineups, "prompt

confrontation [is] desirable because it serve[s] to insure 'the immediate release of an innocent

suspect and at the same time enable the police to resume the search for the fleeing culprit while

the trail is fresh.'" *United States ex rel. Cummings v. Zelker*, 455 F.2d 714, 716 (2d Cir.)

(quoting *Bates v. United States*, 405 F.2d 1104, 1106 (D.C. Cir. 1968)), *cert. denied*, 406 U.S.

927 (1972); *accord United States v. Bautista*, 23 F.3d at 730.  Accordingly, "it is now settled law

that prompt on-the-scene confrontation is 'consistent with good police work' and does not offend

the principles established in *United States v. Wade*[, 388 U.S. 218 (1967)]."  *Zelker*, 455 F.2d at

716 (citing, *inter alia*, *United States v. Sanchez*, 422 F.2d 1198, 1200 (2d  Cir. 1970)); *accord*,

*e.g.*, *McCray v. Barkley*, 2004 WL 32931, *9 (S.D.N.Y. Jan. 7, 2004).

      Where, as here, the police are making a prompt and reasonable effort to identify the

perpetrator, handcuffs and police custody are "necessary incidents of an on-the-scene

identification" that do not "render the pre-trial identification procedure unnecessarily

suggestive." *Bautista*, 23 F.3d at 730 (show-up not unnecessarily suggestive where defendant

was presented to the witness "in handcuffs; at night; in the custody of police officers; with his

face lit by flashlights; and in the presence of [an officer] who, each time [the witness] identified

a suspect, radioed to his fellow officers, 'it's a hit'"); *see also United States v. Butler*, 970 F.2d

1017, 1021 (2d Cir.) (identification proper where suspects were brought to victim who was

sitting in a police car), *cert. denied*, 506 U.S. 980 (1992); *United States v. Sanchez*, 422 F.2d

1198, 1199-1200 (2d Cir. 1970) (police drove suspects by witnesses at the scene of the crime);

*United States v. Ortiz*, 2000 WL 37998, at *1 (S.D.N.Y. Jan. 18, 2000) (defendants were in

handcuffs, standing next to a marked police car, and accompanied by uniformed police officers); *Torrez v. Sabourin*, 2001 WL 401444, at *5 (S.D.N.Y. Apr. 19, 2001) (identification not unduly suggestive where complainant identified defendant while he was on his hands and knees surrounded by police officers and patrol cars). Here, even though Horne was wearing handcuffs, the police officers made efforts to ensure that the handcuffs were not visible to the victim. Moreover, the fact that Horne was in police custody at the time he was identified did not unduly taint the show-up with suggestiveness. Accordingly, Horne's claim that his identification procedure was unduly suggestive does not provide a basis for habeas relief.

### 2.    Trial counsel failed to provide effective representation

According to Horne, trial counsel was deficient in the following respects: (1) failing to request a pre-trial hearing regarding the initial legality of his detainment; (2) failing to object to "*Molineux* type evidence"[1] at trial; (3) failing to object to Horne's "guilt being proven by evidence (there was no evidence in this case) as said at trial"; (4) failing to request that the court charge the lesser included offense of first degree burglary; (5) failing to object when a juror passed a note to another juror; and (6) failing to file an alibi notice. *See* Petition at 8 (Docket #1) and Petitioner's Memorandum in Opposition (Docket #10).

### a.    Legal standard

In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas petitioner must satisfy a two-part test. First, a petitioner must demonstrate that counsel's

---

[1] *People v. Molineux*, 168 N.Y. 264 (1901), held that the prosecution is allowed to present evidence of a defendant's prior uncharged criminal or immoral acts for limited purposes, including proving motive, identity, and intent.

performance was so deficient that counsel was not functioning as "counsel" within the meaning

of the Sixth Amendment to the Constitution. *Id.* at 688. In other words, a petitioner must show

that his attorney's performance "fell below an objective standard of reasonableness." *Id.* Second,

a petitioner must show that counsel's deficient performance prejudiced him. *Id.* at 694. To

establish the "prejudice" prong of the *Strickland* test, a petitioner must show that a "reasonable

probability" exists that, but for counsel's error, the outcome of the trial would have been

different. *Id.* at 694.  The issue of prejudice need not be addressed, however, if a petitioner is

unable to demonstrate first that his counsel's performance was inadequate. "[T]here is no reason

for a court deciding an ineffective assistance claim to . . . address both components of the inquiry

if the defendant makes an insufficient showing on one." *Id.* at 697.

### b.    Alleged grounds of ineffectiveness

#### i.    Failure to request pre-trial hearing regarding detainment

Horne contends that trial counsel erred in failing to request a pre-trial hearing regarding

the legality of Horne's initial detention. Under the circumstances presented here, trial counsel

cannot be faulted for not requesting such a hearing, which almost certainly have been denied. A

forcible stop and detention requires only that the police officer have a "reasonable suspicion"

that the person being approached was involved in a crime. *People v. Hicks*, 68 N.Y.2d 234, 234

(N.Y. 1986). Here, the police certainly had a "reasonable suspicion" that Horne had been

involved in the incident at issue: the victim gave the police Horne's name and stated that he was

the assailant, described Horne and his car, and provided an address where Horne could be found.

When the police went to that address, they found a car matching the description given by the

victim and confirmed that it belonged to Horne. Moreover, Horne identified himself to the

police. *See*, *e.g.*, *Hicks*, 68 N.Y.2d at 234 (Where police received radio reports that a robbery had been committed at a nearby factory by two black men, both about five-feet five-inches tall, in a green Pontiac with black trim, the police had reasonable suspicion to support the original stop and frisk of defendant and his companion, black men of apparently equal size in a grey and black Buick sedan close to, and coming from the direction of, the factory where the robbery had occurred only minutes before, at 4:00 a.m., with little or no other traffic in the area.). Counsel cannot be faulted for failing to make a baseless motion, and Horne was not prejudiced by counsel's failure to make a motion that would not have been successful.

### ii.    Failure to object to "*Molineux*-type" evidence

Horne's argument, in its entirety, is that trial counsel failed to object to "*Molineux*-type evidence at trial." Because Horne provides no specifics regarding the allegedly offensive testimony that deserved an objection, this claim is too vague to state a proper ground for habeas relief.

### iii.    Failure to object to insufficiency of the evidence

Horne faults counsel for "fail[ing] to object to [petitioner's] guilt being proven by evidence (there was no evidence in this case) as said at trial[.]" Petition at 8 (Docket #1). Although the phrasing is rather confusing, it appears that Horne is asserting that trial counsel erred in failing to move to dismiss the indictment at the close of the prosecution's proof on the basis that the evidence was insufficient.

On direct appeal, appellate counsel argued that the verdict was against the weight of the evidence. The state appellate court rejected this contention, holding that the verdict was not against the weight of the evidence, despite some inconsistences in the testimony of the witnesses.

The state appellate court reviewed the pertinent testimony and noted that the victim testified that he was awakened by someone pounding at the door to his apartment and that, when he opened the door, Horne pointed a shotgun at his face and demanded to know the whereabouts of the victim's roommate. The state appellate court observed that the victim's testimony was corroborated by the roommate and the roommate's girlfriend, each of whom heard the exchange and recognized Horne's voice. In addition, the roommate heard the victim refer to the gun, and the girlfriend heard the victim say, "Get that thing away from me." *People v. Horne*, 2 A.D.2d at 1400.

Given that the state appellate court rejected Horne's weight of the evidence claim, it necessarily would have rejected a challenge to the sufficiency of the evidence. In New York, the intermediate appellate courts are permitted to independently "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony." *People v. Bleakley*, 69 N.Y.2d 490, 495 (N.Y. 1987). This is a more stringent standard than that which must be following in deciding a claim of evidentiary insufficiency under the Due Process Clause. When considering the sufficiency of the evidence, a reviewing court is limited to determining "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *accord People v. Santi*, 3 N.Y.3d 234, 246 (N.Y. 2004).  Furthermore, the reviewing court must defer to the jury's "assessments of the weight of the evidence and the credibility of witnesses," *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996), and may only overturn the conviction if the petitioner has shown that, "upon the record evidence adduced at the trial *no*

rational trier of fact could have found proof of guilt beyond a reasonable doubt," *Jackson*, 443

U.S. at 324 (emphasis added). *Accord People v. Santi*, 3 N.Y.3d at 246 ("Ultimately, so long as

the evidence at trial establishes 'any valid line of reasoning and permissible inferences [that]

could lead a rational person' to convict, then the conviction survives sufficiency review.")

(quotation omitted).

The appellate court found that the weight of the evidence supported Horne's conviction

so, *a fortiori*, his conviction was supported by legally sufficient evidence. Thus, trial counsel's

failure to preserve a sufficiency claim did not prejudice Horne because he nevertheless was

afforded review of the weight of the evidence to support his conviction, a considerably more

favorable inquiry from a defendant's point of view. Because Horne cannot show that he was

prejudiced, there is no need to consider whether counsel's performance was deficient. *Strickland*,

466 U.S. at 697.

### iv.     Failure to request lesser included offenses

It was not deficient on trial counsel's part to refrain from requesting a charge on the

lesser included offense of second degree burglary. As respondent points out, under the Penal

Law, second degree burglary would have required counsel to present the affirmative defense that

the shotgun was not loaded. *See* N.Y. Penal Law § 140.30(4). Indeed, counsel could not have

credibly pursued that affirmative defense because the shotgun never was recovered. Rather, trial

counsel defended Horne on the basis that he was not the perpetrator; the defense of

misidentification would have conflicted with the defense that the weapon was not loaded.

This type of a defense, which denies guilt, is "'a strategy that practically precludes a

request for an instruction on a lesser included offense.'" *Otero v. Eisenschmidt*, No. 01 Civ.2562,

2004 WL 2504382 at *3 (S.D.N.Y. Nov. 8, 2004) (quoting *Yu v. United States*, 97 Civ. 2736,

1997 WL 423070 at *3 (S.D.N.Y. July 29, 1997) (internal quotation marks omitted) and citing,

*inter alia*, *Brown v. Rick*, 01 Civ. 4310, 2003 WL 22801397 at *6 (S.D.N.Y. Nov. 25, 2003)

(holding that counsel was not ineffective for failing to inform defendant of right to request lesser

included offense because such a request is a matter of strategy); *Smith v. Walsh*, 02 Civ. 5755,

2003 WL 21649485 at *7 (S.D.N.Y. July 14, 2003) (finding that counsel was not ineffective for

failing to request charge on lesser included offense because such a charge "would have

undermined counsel's strategy of seeking an acquittal"); *Domingo v. Greiner*, 99 Civ.1906, 2002

WL 362761 at *2 (S.D.N.Y. Mar. 5, 2002) ("While with hindsight, counsel's decision not to

seek a lesser included offense charge did not prove successful, his decision not to give the jury

an option that could result in a compromise verdict was not unreasonable. . . . For petitioner's

counsel to make an argument that petitioner should be found guilty of [the lesser included

offense] would severely undermine his basic argument that petitioner should not be found guilty

of any crime."); *Rios v. United States*, No. CV-91-4384, 1992 WL 328931 at *6-7 (E.D.N.Y.

Oct. 13, 1992) ("Courts have declined to find ineffective assistance of counsel where counsel

pursues an exculpatory defense although such a choice practically precludes a request for an

instruction on a lesser included offense. . . . The tactical decision to pursue a complete,

exculpatory defense rather than a partial one enjoys substantial deference. . . . Having presented

no evidence on a partial defense, counsel had no reason or basis to request an instruction on the

lesser included offense.")). Horne cannot show that trial counsel's strategic decision to not

pursue the lesser included manslaughter charge amounted to constitutionally deficient

performance. *See id.* Simply because the chosen strategy was unsuccessful does not render

counsel's representation inadequate. Habeas relief therefore is not warranted on this claim.

**v.      Failure to object to passing of note between jurors**

This claim, too, is hopelessly vague and speculative. Horne provides no particulars as to what was contained in the note and how it could have compromised the fairness of his trial. Moreover, trial counsel was made aware of the content of all of the jury's notes. Therefore, this claim cannot support a claim for habeas relief.

**vi.      Failure to file an alibi notice**

Horne contends that trial counsel erroneously failed to file a notice of alibi pursuant to New York Criminal Procedure Law ("C.P.L.") § 250.20 and thereby deprived him of the right to present witnesses in his defense. In particular, Horne complains that he was denied the opportunity to have Kyle testify that Horne was with her at her apartment during the burglary.

Kyle's affidavit, presented in support of Horne's C.P.L. § 440.10 motion, that Horne was at home with her at the time of the burglary, is inherently incredible since all of the witnesses testified that Swygert and Hammond were babysitting for Kyle and Horne at Kyle and Horne's apartment while they went out. The decision *not* to call a witness who would have presented unbelievable testimony was a prudent tactical choice on the part of trial counsel. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Id.* at 689-90. The Second Circuit has held that "the decision to call or bypass particular witnesses is peculiarly a question of trial strategy, *United States v. Matalon*, 445 F.2d 1215, 1219 (2d Cir.), *cert. denied*, 404 U.S. 853 (1971), which courts will practically never second-guess." *United States ex rel. Walker v. Henderson*, 492 F.2d 1311, 1314 (2d Cir. 1974). As Horne cannot show that counsel's performance was deficient, there is no need to

-15-

consider whether he was prejudiced by counsel's decision not to call Kyle as a witness. *Strickland*, 466 U.S. at 697.

### 3. The verdict was against the weight of the evidence

Horne contends that the "verdict's [*sic*] were against the weight of the credible evidence." Petition at 8 (Docket #1). However, challenges to the weight of the evidence supporting a conviction, unlike challenges to the sufficiency of the evidence, are not cognizable on Federal habeas review. *Maldonado v. Scully*, 86 F.3d at 35. A claim that a verdict was against the weight of the evidence derives from C.P.L. § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. Crim. Proc. Law 470.15(5). Thus, the "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. *People v. Bleakley*, 69 N.Y.2d at 495. Since a weight-of-the-evidence claim is purely a matter of state law, it is not cognizable on habeas review. *See* 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

In keeping with the principle that complaints of *pro se* petitioners are to be considered liberally in their favor, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), some habeas courts have construed weight-of-the-evidence claims as insufficiency-of-the-evidence claims. *E.g.*, *Davis v. McLaughlin*, 122 F. Supp.2d 437, 441 (S.D.N.Y. 2000) (treating petitioner's claim that his

conviction was against the weight of the evidence and that the prosecution did not prove his guilt beyond a reasonable doubt as "legal sufficiency" claim). Here, the Court has effectively done so in the context of its analysis of Horne's claim that trial counsel was ineffective in failing to preserve a claim based on insufficiency of the evidence. As discussed above in this opinion, Horne does not have a meritorious claim based on evidentiary insufficiency.

### 4.    The sentence was harsh and excessive

Finally, Horne asserts that the sentence was harsh and excessive given his "polite and cooperative" nature when he was arrested; his steady employment history; and the fact that he has a high school diploma. A petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court. *See Fielding v. LeFevre*, 548 F.2d 1102, 1109 (2d Cir. 1977) (citing *Townsend v. Burke*, 334 U.S. 736, 741 (1948). A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *accord Ross v. Gavin*, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion).

Horne was sentenced as a second felony offender to a determinate term of eight years on the charge of first degree burglary (N.Y. Penal Law § 140.30(4)), a class B felony; and a concurrent term of one year on the charge of second degree menacing (N.Y. Penal Law § 120.14(1)), a class A misdemeanor. New York Penal Law provides that first degree burglary as defined in Penal Law § 140.30 is a violent felony offense. N.Y. Penal Law § 70.02(1)(a). Because Horne was adjudicated as a second felony offender and convicted of a violent felony offense, the court was obligated to impose a determinate sentence of not less than eight years and not more than twenty-five years. N.Y. Penal Law § 70.06(6)(a). Horne's term of imprisonment

falls well within the statutory range; indeed, he received the shortest sentence possible under the circumstances. Thus, his sentencing claim does not present a federal constitutional question cognizable on habeas review.

### CONCLUSION

For the reasons stated above, Mark P. Horne's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because Horne has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:        May 23, 2006
             Rochester, New York